RECEIVED

OCT 22 2024

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

CARSTEN J. QUINLAN,

         Plaintiff,

v.

DANIEL PULS,
CHERYL PULS, and
ALISSA PULS

        Defendants.

Case No.   24-cv-3990 (ADM/DLM)

## COMPLAINT AND JURY DEMAND

Plaintiff, Carsten J. Quinlan (hereinafter "Plaintiff" or "Mr. Quinlan"), for his Complaint against Defendants, Alissa Puls (hereinafter "Ms. Puls"), Cheryl Puls and Daniel Puls, alleges as follows:

### INTRODUCTION AND NATURE OF THE CASE

1.    This is a civil action for deprivation of parental rights (due process); conspiracy; defamation; negligence; fraud and misrepresentation; malicious prosecution; abuse of process; negligent infliction of emotional distress; willful & wanton misconduct; harassment; tortious interference; assault and battery; intentional infliction of emotional distress; and breach of contract.

2.    Mr. Quinlan was married to Ms. Puls from March 16, 2016 to December 8, 2022.

3.    Cheryl Puls and Daniel Puls are the parents of Alissa Puls and were formerly the parents-in-law of Carsten J. Quinlan.

4.    Mr. Quinlan and Ms. Puls have three minor children together: AGQ, a girl born in 2016; EDQ, a boy born in 2018; and LEQ, a girl born in 2020.

5.      Defendants, through a series of coordinated false allegations, fabricated claims of domestic violence and sexual abuse against Plaintiff with the objective of removing him from his role as a father to his three minor children and the objective of securing complete control of the children.

6.      In pursuit of their objective, Ms. Puls and her parents, Cheryl Puls and Daniel Puls, have engaged in a continuing pattern of deceit, manipulation, and harassment, all designed to alienate Mr. Quinlan from his children and deprive him of his parental rights.

7.      On October 4, 2018, Ms. Puls physically assaulted Plaintiff. The contact did not result in bodily harm but was offensive, unwanted, and made Plaintiff reasonably fear for his safety. Plaintiff called the police for intervention, and consequently discord between Plaintiff and the Defendants greatly increased.

8.      In November 2019, Daniel Puls forcibly pushed Plaintiff aside to gain entry into Plaintiff's home after being explicitly denied entry. This action constituted unwanted physical contact and battery. Defendant Daniel Puls's conduct was aggressive, offensive, and non-consensual.

9.      On December 19, 2019, Ms. Puls again physically assaulted Plaintiff. As with the previous incident, the contact was unwanted, offensive, and intended to provoke Plaintiff. Plaintiff refrained from any physical response, fearing that such a reaction would be used against him in future false accusations of domestic violence.

10.      On April 17, 2021, Defendant Cheryl Puls blocked Plaintiff's attempt to exit his residence by standing in a doorway and refusing to move. When Plaintiff tried to pass, Cheryl Puls exaggeratedly reacted, pretending to be in harmed in order to falsely accuse Plaintiff of domestic violence.

11.      Following Cheryl Puls's exaggerated reaction, Daniel Puls attacked Plaintiff from behind, putting Plaintiff in a headlock while shouting at him. Daniel Puls also proceeded to push and shove Mr. Quinlan. Daniel Puls's actions were unprovoked, unwarranted, unwanted, and caused Plaintiff to fear that

Defendants intended to provoke him and accuse him of domestic violence. Plaintiff did not retaliate physically and attempted to de-escalate the situation.

12.     These events sparked the Defendants' first instance of malicious prosecution and related tortious actions resulted from this event on April 17, 2021. Ten days later on April 27, 2021 Cheryl Puls and Daniel Puls called the police when Mr. Quinlan attempted to remove them from his house and got Mr. Quinlan arrested by making false allegations of domestic violence.

13.     In April 2021, Cheryl Puls and Daniel Puls made false statements to the 911 operator, the Madison Police Department, and any related officials. Further, they abused legal processes that are set up to protect real victims of domestic violence to force the Police to arrest and prosecute Mr. Quinlan under "mandatory arrest" statutes.

14.     Mr. Quinlan was criminally charged at that time, but the charges were ultimately dropped when Mr. Quinlan demanded his right to a jury trial and refused to concede to any plea bargain.

15.     Both during and after the divorce, Ms. Puls has participated in this instance of malicious prosecution by using this event as evidence to falsely portray Mr. Quinlan as a violent person.

16.     In January 2023, while in a public library, Defendant Daniel Puls threatened Plaintiff by stating that Plaintiff was "a problem" that he would "get rid of." This threat was made after Plaintiff asserted his parental rights concerning time with his daughter, LEQ. Defendant's statement caused Plaintiff to fear for his personal safety and constituted an act of intimidation.

17.     The second instance of Defendants' malicious prosecution and related tortious actions occurred in January 2023, in which Ms. Puls initiated criminal prosecution of Mr. Quinlan by making false allegations of sexual child abuse.  In doing so, Ms. Puls obtained full custody of the minor children just seven (7) weeks after the divorce between Ms. Puls and Mr. Quinlan was settled through mediation, in which the parties had agreed to joint custody of the minor children.

3

18.    Again, all Defendants participated in making these false allegations of sexual abuse by either directly making the allegations to third parties, or by participating in the manipulation, coaching, and witness tampering of AGQ, or both.

19.    The third instance of Defendants' malicious prosecution and related tortious actions occurred in April 2024 where Ms. Puls initiated a juvenile case to terminate Plaintiff's parental rights based on the same false allegations of sexual abuse.

20.    In October 2024, this case also terminated in Plaintiff's favor because his parental rights were not terminated.

21.    Again, as before, all Defendants participated in making these false allegations of sexual abuse by either directly making the allegations to third parties, or by participating in the manipulation, coaching, and witness tampering of AGQ, or both. All Defendants continued their tortious actions.

22.    Over approximately the last six (6) years, starting in October 2018, Defendants have shown a clear and persistent pattern of extreme malice toward Mr. Quinlan with a ruthless campaign of false accusations, defamatory statements alleging physical and sexual violence, and many instances of tortious conduct against Plaintiff.

23.    Defendants' tortious actions have caused Plaintiff financial losses, emotional anguish, damage to his reputation, and have caused egregious harm to the minor children, who have suffered medical child abuse and parental alienation from their father.

24.    Defendants have conspired together to commit their tortious acts against Plaintiff. As a result, Defendants must be held liable for the causes of action stated herein and for the damages requested by Plaintiff.

**PARTIES**

25.    Plaintiff, Carsten J. Quinlan, is an adult residing in Minnesota.

4

26.     Defendant, Alissa Puls, is an adult and is believed to reside in Wisconsin.

27.     Defendant, Cheryl Puls, is an adult and is believed to reside in Wisconsin.

28.     Defendant, Daniel Puls, is an adult and is believed to reside in Wisconsin.

## JURISDICTION AND VENUE

29.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331, 1332, and 1367.

30.     Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the claims asserted herein occurred within this judicial district.

## FACTUAL BACKGROUND

31.     Plaintiff Carsten J. Quinlan and Defendant Alissa Puls were married for approximately 7 years and have three children together. Throughout their marriage, the couple often disagreed about the extent and necessity of medical care for their children, with Ms. Puls persistently pushing for more medical interventions and Plaintiff advocating for caution and limiting unnecessary treatments.

32.     In April 2021, Ms. Puls's parents, Cheryl Puls and Daniel Puls, instigated the first instance of malicious prosecution against Mr. Quinlan.  Cheryl Puls and Daniel Puls attempted to provoke Mr. Quinlan into a violent altercation by attacking him, harassing him, and making false allegations of domestic violence against him.  Cheryl Puls and Daniel Puls took advantage of mandatory arrest laws to cause the police to arrest and prosecute Mr. Quinlan.  Ms. Puls recorded a video of the encounter that clearly shows that Mr. Quinlan was not violent, but rather that Daniel Puls was violent toward Mr. Quinlan.

33.     Although at first Ms. Puls was upset at her parents for instigating the prosecution of Mr. Quinlan, Ms. Puls ultimately decided to use this first criminal prosecution of Mr. Quinlan as leverage and evidence of Mr. Quinlan being a violent person to make her other false allegations seem more plausible.

34.     On May 18, 2021, Ms. Puls followed her parent's example and attempted to instigate malicious prosecution against Mr. Quinlan by faking a bloody nose and accusing Mr. Quinlan of headbutting her. Ms. Puls also made false allegations against Mr. Quinlan's mother by falsely claiming that LEQ had been harmed by her. Both claims were false.

35.     On May 26, 2021, Mr. Quinlan confronted Ms. Puls with medical records proving that their daughter LEQ did not have any injury, as Ms. Puls had falsely claimed.  Mr. Quinlan also confronted Ms. Puls with the tissues she had used for her fake bloody nose. Ms. Puls called the police and attempted to have Mr. Quinlan arrested based upon her false allegations. The tissues had no blood on them and prove that Ms. Puls was lying about an injury in order to falsely accuse Mr. Quinlan of domestic violence, just as her parents had done a month earlier.

36.     These false allegations and escalations to the police in April and May of 2021 were not isolated incidents, but marked the beginning of a destructive pattern of behavior in which Ms. Puls and her parents fabricated false allegations and legal problems for Mr. Quinlan in an effort to gain full control over the children.

37.     During the subsequent divorce proceedings Mr. Quinlan remained committed to being actively involved in the medical care and upbringing of the children.  However, Ms. Puls immediately engaged in Parental Alienation behavior to severely limit Mr. Quinlan's access to his children.

38.     Ms. Puls was required to notify Mr. Quinlan of all medical appointments for the children, ensuring that Mr. Quinlan could participate in their healthcare decisions. However, Ms. Puls continued to engage in deceptive practices, repeatedly attempting to arrange medical appointments for the children without informing Mr. Quinlan.

39.     An alarming example of this was in February 2022, when Ms. Puls sought to have LEQ undergo an adenoidectomy (surgery to remove the adenoids from the sinuses).  Mr. Quinlan discovered

that Ms. Puls had exaggerated and lied about LEQ's symptoms to justify the surgery. Once Ms. Puls's lies were brought to light by Mr. Quinlan, the adenoidectomy was canceled.

40.    As a result of Mr. Quinlan's opposition to the adenoidectomy, in February 2022 Ms. Puls made a motion to gain full medical custody and submitted an affidavit in which she claimed that Mr. Quinlan was opposing medical care of the children and that Mr. Quinlan was intentionally giving the children food they were allergic to. These perjurious statements in her affidavit were outrageous and false.

41.    Despite Mr. Quinlan's opposition and concerns about Ms. Puls's continued dishonesty regarding LEQ's medical needs, Ms. Puls rescheduled the adenoidectomy for May 5, 2022, deliberately choosing a time when Mr. Quinlan would be out of the country on a business trip to Paris to make it impossible for Mr. Quinlan to be involved. This demonstrates her disregard for Mr. Quinlan's parental rights and continuing pattern of manipulation and deceit in order to exercise full control over the children's medical care.

42.    In June 2022, Ms. Puls temporarily gained full medical custody of the children by making false allegations of abuse against Mr. Quinlan during a temporary custody hearing. During the hearing, Ms. Puls falsely testified that Mr. Quinlan had caused her to suffer multiple broken bones and that she had to go to the emergency room at the hospital. Ms. Puls also made false allegations of rape against Mr. Quinlan. As a result of this hearing, Mr. Quinlan's parenting time with the children was severely restricted.

43.    Following Ms. Puls's receipt of full custody, there was an extreme increase in the frequency of medical appointments and interventions for all three children, many of which were unnecessary and harmful. Ms. Puls's control over the children's medical care enabled her to continue her pattern of deception and manipulation, further isolating Plaintiff from his children.

44.    In a custody evaluation report conducted by Shelly Anday during the latter half of 2022, Ms. Puls admitted that she enjoyed having full medical control of the children and expressed her desire to maintain such arrangement.

45.    Further, Ms. Puls also admitted to Shelly Anday that after receiving temporary full custody, she no longer claimed that the children were getting sick from the food provided by Mr. Quinlan, exposing the baseless nature of her prior accusations.

46.    The custody evaluation report did not substantiate Ms. Puls's claims of abuse lodged against Mr. Quinlan. Instead, the custody evaluation report was mostly positive toward Mr. Quinlan and documented that Ms. Puls's allegations of abuse were not credible and were frequently refuted by evidence provided by Mr. Quinlan.

47.    After completion of the custody evaluation report, Ms. Puls and Mr. Quinlan settled their divorce through mediation on December 8, 2022, with a reasonable agreement for joint custody of the children.

48.    Shortly after the joint custody agreement, on January 26, 2023, Ms. Puls made new false allegations of sexual abuse against Mr. Quinlan, leading to his arrest and subsequent criminal prosecution.

49.    Ms. Puls and her parents, Cheryl Puls and Daniel Puls, manipulated the eldest daughter, AGQ, to give sexualized interpretations of innocent events with Mr. Quinlan such as swimming and potty training, fabricating the foundation for the allegations.  Ms. Puls, Cheryl Puls, and Daniel Puls encouraged AGQ to fabricate these stories through various rewards, and especially by asking leading and suggestive questions.

50.    Although Ms. Puls had failed to secure full custody by making these false allegations during the divorce proceedings in Wisconsin, she was successful at securing full custody of the children by making these same false allegations to authorities in Minnesota.

51.     Ms. Puls's agreement to settle the divorce through mediation was clearly done in bad faith, as her actions show she had no intention of sharing joint custody of the children with Mr. Quinlan. As such, this forms the basis of the allegations of breach of contract regarding the divorce settlement agreement.

52.     These false allegations resulted in Ms. Puls obtaining full custody of the children and filing for an Order for Protection ("OFP") in February 2023, which further cut off Plaintiff's access to his children and their medical care.  In her affidavit requesting the OFP, Ms. Puls made several false statements to justify the OFP.  This additional legal barrier has persisted despite Mr. Quinlan getting an acquittal of the criminal charges later in April 2024, causing further unjust separation between Mr. Quinlan and his children.

53.     As a result of the heinous nature of the pending criminal charges, Mr. Quinlan was unable to find employment.  In March 2023, Mr. Quinlan was offered employment as a Java Developer with FD Software for a $110,000 annual salary.  Mr. Quinlan accepted this offer.  However, once FD Software ran a background check, FD Software immediately rescinded their offer due to the criminal charges pending against Mr. Quinlan.

54.     Mr. Quinlan was able to find another job in May 2023 with SaVia Health.  However, Mr. Quinlan was fired after just three months.  Mr. Quinlan believes that his employer discovered the pending criminal charges and that resulted in him losing his job.

55.     Mr. Quinlan has been unable to secure new employment since August 2023.  Compounded with the incredible legal costs Mr. Quinlan has incurred in defending the false allegations of Defendants, he has experienced extreme financial hardship.

56.     As part of the criminal proceedings, on August 30, 2023 Mr. Quinlan was granted the discovery request for all recordings of the children created by Ms. Puls or her mother.  Ms. Puls and her

9

Cheryl Puls withheld the vast majority of the recordings they had made, turning over only about 10% of the recordings that they made while claiming to have turned over all the information. This malicious deception was obvious upon reviewing the metadata of the recording files, which revealed the original filenames. For example, one file was named "New Recording 103.m4p." In doing so, Defendants hoped to deny Mr. Quinlan access to exculpatory evidence to increase the likelihood of a wrongful conviction.

57.     In April 2024, Mr. Quinlan went to trial on claims of sexual abuse. Mr. Quinlan had the opportunity to defend himself from the false charges of sexual abuse of his children at his trial. The jury granted Mr. Quinlan a full acquittal of all the criminal charges against him.

58.     Ms. Puls, Cheryl Puls, and Daniel Puls did not testify against Mr. Quinlan at trial. Instead, Defendants manipulated the eldest daughter, AGQ, into testifying against Mr. Quinlan through a careful and calculated campaign of coaching AGQ to make false claims of sexual abuse.

59.     Ms. Puls has also made further false allegations of stalking against Mr. Quinlan throughout 2023 and 2024. For example, she has claimed to need a "Safe at Home" address and claimed that Mr. Quinlan has not followed the restrictions in the Order for Protection that she fraudulently filed. These claims are categorically false, baseless, and continuance of her pattern of making false allegations against Mr. Quinlan.

60.     In November 2023, Plaintiff discovered that Ms. Puls most likely has the dangerous mental disorder of Munchausen by Proxy Syndrome ("MBPS"). With this disorder, Ms. Puls is addicted to manipulating the children's medical care to create or exaggerate illnesses in the children because she craves the attention and sympathy she gets as the mother of ill children.

61.     In January 2024, Plaintiff filed a civil lawsuit against UW Health for allowing Ms. Puls to medically abuse the children and failing to recognize the signs of MBPS. Despite being served with the lawsuit, UW Health proceeded to perform an invasive G-tube surgery on LEQ without verifying that it

was medically necessary, further demonstrating the medical abuse that Mr. Quinlan has attempted to prevent.

62.     On April 15, 2021, after being acquitted of all criminal charges, Mr. Quinlan promptly filed an Emergency Motion for Full Custody and for strict limitations against Ms. Puls being involved in the healthcare of the children due to the extensive evidence of medical child abuse, the extreme parental alienation, and malicious prosecution instigated by Defendants against Mr. Quinlan.

63.     Despite being acquitted of all charges by a jury in April 2024, Defendants have continued their malicious campaign against Mr. Quinlan.  Their behavior resulted in the initiation of a juvenile case aimed at terminating Plaintiff's parental rights based on the exact same false allegations that had already been evaluated in the criminal trial.

64.     In August 2024, Mr. Quinlan was able to have his evidence of MBPS evaluated by a national expert, Professor Beatrice Yorker, who determined that the evidence shows that the children, especially LEQ, are victims of medical child abuse by the mother Ms. Puls. Ms. Yorker's findings were written into her affidavit and expert report.

65.     During the discovery phase of the juvenile case, Ms. Puls and Washington County (Minnesota) refused to provide Plaintiff with full access to the children's medical records.  Instead, Ms. Puls and Washington County "cherry-picked" only those medical records that painted Plaintiff in a negative light (aimed at arguing that Mr. Quinlan was opposing medical care of the children) while withholding crucial evidence that would exonerate him.  Again, Ms. Puls chose to withhold exculpatory evidence from Mr. Quinlan with the hope of causing him to lose his parental rights unjustly.

66.     Despite withholding exculpatory evidence from Mr. Quinlan, Defendants' third instance of malicious prosecution also ended in his favor, as the case was resolved and Mr. Quinlan's parental rights were not terminated.

67.    Defendants have acted in concert and as part of a conspiracy to concoct false allegations of domestic violence and sexual abuse against Mr. Quinlan.

68.    Carsten J. Quinlan has suffered damages as a result of the tortious actions of Defendants.

## COUNT I
### 42 U.S.C. § 1983 (Due Process) – All Defendants

69.    Plaintiff repeats and realleges paragraphs 1 through 69 as set forth above.

70.    As a result of his status as parent of the three minor children, Carsten J. Quinlan had a liberty interest in having a custodial and companionship relationship with his children.

71.    In the manner described more fully above, Defendants individually, jointly, and in conspiracy with one another, acted to deprive Plaintiff of his liberty interest in having a relationship with his children, without due process of law and in violation of his rights secured by the U.S. Constitution.

72.    Further, Defendant's tortious acts were done "under color of law" by manipulating governmental authorities and abuse of legal processes to steal full control over the children.

73.    The misconduct of Defendants was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

74.    As a result of the Defendants' misconduct, Plaintiff was deprived of his parental relationship with his children and suffered great mental and emotional anguish and other grievous and continuing injuries and damages as set forth above.

75.    WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of jurisdictional limits, along with punitive damages and any other relief this Court deems just and appropriate.

## COUNT II
### Conspiracy – All Defendants

76.    Plaintiff repeats and realleges paragraphs 1 through 75 as set forth above.

12

77.     All Defendants, and each of them, reached an agreement amongst themselves to harm Plaintiff.

78.     Defendants agreed to the following approximate terms for their conspiracy: Ms. Puls's parents, Cheryl Puls and Daniel Puls, have agreed to provide Ms. Puls with financial resources, living accommodations, childcare, and similar assistance. They have also agreed to help Ms. Puls conceal and indulge in her addiction to medical services and attention. In return, Ms. Puls agreed to obtain full custody of the children from Mr. Quinlan to share with her parents. As a result, Ms. Puls and her parents have established a living agreement in which they both enjoy unfettered access and control over the children without Mr. Quinlan being involved.

79.     Defendants agreed to engage in a course of conduct involving false allegations of abuse, manipulation of the children, and misleading statements to law enforcement, child protective services, and courts of law, with the intent of achieving their unlawful objective of alienating Plaintiff from his children and obtaining full control over their lives.

80.     Defendants committed overt acts in furtherance of the conspiracy, including but not limited to making false reports of abuse, providing perjured testimony, and withholding material information during legal proceedings.

81.     Each of the co-conspirators were willful participants in joint action.

82.     Defendant's illegal agreement, malicious plotting, and collection of overt acts were mostly successful toward the end of destroying Mr. Quinlan and stealing full control over his children.

83.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally to cause harm to Plaintiff and with willful indifference to Plaintiff's rights.

84.     As a direct and proximate result of the illicit agreement and overt acts referenced above, Plaintiff was deprived of his relationship with his children, and suffered great mental and emotional anguish and other grievous and continuing injuries and damages.

85.     WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of jurisdictional limits, along with punitive damages and any other relief this Court deems just and appropriate.

## COUNT III
### Defamation – All Defendants

86.     Plaintiff repeats and realleges paragraphs 1 through 85 as set forth above.

87.     At all relevant times to the events described above, Defendants, and each of them, stated that Plaintiff committed acts of domestic violence against his family.

88.     At all relevant times to the events described above, Defendants, and each of them, stated, verbally and/or in writing, that Plaintiff committed acts of sexual abuse against his children and Ms. Puls.

89.     At all relevant times to the events described above, Defendants, and each of them, stated, verbally and/or in writing, that Plaintiff committed acts of domestic violence and sexual abuse.

90.     The statements made by Defendants that Plaintiff committed acts of domestic violence and sexual abuse are categorically false.

91.     Defendants, and each of them, either knew their statements were false, or acted with reckless disregard for the truth, or both.

92.     As a direct and proximate result of Defendants' actions, Plaintiff was deprived of his relationship with his children, and suffered great mental and emotional anguish and other grievous and continuing injuries and damages.

93.    WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of jurisdictional limits, along with punitive damages and any other relief this Court deems just and appropriate.

## COUNT IV
### Negligence – All Defendants

94.    Plaintiff repeats and realleges paragraphs 1 through 93 as set forth above.

95.    At all times relevant to the events described above, the Defendants, and each of them, had a duty to exercise ordinary care to refrain from any act which will cause foreseeable harm to Plaintiff, and to refrain from any act which creates an unreasonable risk to Plaintiff.

96.    Defendants breached that duty by making false allegations of abuse, manipulating the children, withholding crucial information about their medical care, and initiating unfounded legal actions against Plaintiff.

97.    Defendants' actions were negligent in that they acted without reasonable care for the truth of the allegations and without considering the harm their actions would cause to Plaintiff.

98.    Defendants breached their duty of ordinary care as a result of their negligent actions.

99.    As a direct and proximate result of Defendants' actions, Plaintiff was deprived of his relationship with his children, and suffered great mental and emotional anguish and other grievous and continuing injuries and damages.

100.    WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of jurisdictional limits, along with punitive damages and any other relief this Court deems just and appropriate.

## COUNT V
### Fraud and Misrepresentation – All Defendants

101.    Plaintiff repeats and realleges paragraphs 1 through 100 as set forth above.

102.    Defendants, and each of them, have made representation to various parties that are false and untrue, and were known by all Defendants to be false at the time they were made.

103.    Defendants, and each of them, have made representations and claims that were also known to be false and untrue, which pertained to Plaintiff, and which claims were either known or reasonably ascertained by Defendants to be untrue.

104.    The Defendants have made these representations with the intent to deceive or defraud other parties with substantial governmental authority, such as the Police and CPS in Wisconsin and Minnesota,

105.    These other parties have frequently relied upon these false statements and misrepresentations of Defendants to harm and damage Mr. Quinlan, as Defendants intended.

106.    These other parties have frequently relied upon these false statements and misrepresentations of Defendants to reward Defendants with resources, favor, and full control of the children, as Defendants intended.

107.    That as a direct and proximate cause of the intentional and fraudulent representations of all Defendants, Plaintiff was deprived of his relationship with his children, and suffered great mental and emotional anguish and other grievous and continuing injuries and damages.

108.    WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of jurisdictional limits, along with punitive damages and any other relief this Court deems just and appropriate.

### COUNT VI
**Malicious Prosecution – All Defendants**

109.    Plaintiff repeats and realleges paragraphs 1 through 108 as set forth above.

110.    Defendants, and each of them, have maliciously initiated legal proceedings against Plaintiff multiple times, as specified above.

16

111.    In all cases in which Defendants have initiated (or attempted to initiate) legal proceedings against Plaintiff, their allegations have been entirely false and without merit.

112.    In all cases in which Defendants have initiated (or attempted to initiate) legal proceedings against Plaintiff, Defendants knew their allegations were false and without merit, or acted with reckless disregard for the truth, or both.

113.    In all cases in which Defendants have initiated (or attempted to initiate) legal proceedings against Plaintiff, Defendants have acted with malice toward Plaintiff.

114.    Defendants maliciously, intentionally, willfully, and recklessly abused any available legal processes they could toward the end of harming Plaintiff and stealing full custody of the children.

115.    In all cases in which Defendants have initiated (or attempted to initiate) legal proceedings against Plaintiff, the legal proceedings were terminated in his favor.

116.    That as a direct and proximate cause of the multiple instances of malicious prosecution initiated by all Defendants, Plaintiff was deprived of his relationship with his children, and suffered great mental and emotional anguish and other grievous and continuing injuries and damages.

117.    WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of jurisdictional limits, along with punitive damages and any other relief this Court deems just and appropriate.

## COUNT VII
### Abuse of Process – All Defendants

118.    Plaintiff repeats and realleges paragraphs 1 through 117 as set forth above.

119.    The Defendants, and each of them, did wrongly threaten, file, and instigate legal actions and abuse legal processes toward the end of harming Plaintiff.

120.    The Defendants, and each of them, intentionally used a wide variety of legal procedures, statutes, governmental aid systems, and similar processes in a manner that those processes were not intended, and with fraud, and toward the end of harming Plaintiff.

121.    For example, Cheryl Puls and Daniel Puls relied upon mandatory arrest statutes in Wisconsin to force the Police to arrest and prosecute Mr. Quinlan in April 2021.

122.    For another example, in February 2023, Ms. Puls fraudulently filed for an Order for Protection in order to alienate Mr. Quinlan from his children.

123.    For both of these examples, Defendants abused legal processes designed to protect real victims of domestic violence for the wrongful purpose of harming Plaintiff and separating him from his children.

124.    That as a direct and proximate cause of the various abuses of process by all Defendants, Plaintiff was deprived of his relationship with his children, and suffered great mental and emotional anguish and other grievous and continuing injuries and damages.

125.    WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of jurisdictional limits, along with punitive damages and any other relief this Court deems just and appropriate.

## COUNT VIII
### Negligent Infliction of Emotional Distress – All Defendants

126.    Plaintiff repeats and realleges paragraphs 1 through 125 as set forth above.

127.    At all times relevant to the events described above, the Defendants, and each of them, acted without ordinary care or as a person in their conduct described herein.

128.    All of the conduct described herein by Defendants, a reasonable person would recognize as creating an unwarranted and unacceptable risk of injury to Plaintiff.

129.    As a proximate result of Defendants' negligent conduct, Plaintiff suffered severe emotional distress.

130.    WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of jurisdictional limits, along with punitive damages and any other relief this Court deems just and appropriate.

**COUNT IX**
**Willful & Wanton Misconduct – All Defendants**

131.    Plaintiff repeats and realleges paragraphs 1 through 130 as set forth above.

132.    At all times relevant to the events described above, the Defendants, and each of them, acted in making false allegations against Plaintiff and showed a conscious disregard for the truth and acted with malicious intent.

133.    Defendants acted with an intentional disregard for the rights of Plaintiff.

134.    As a result of the Defendants' misconduct, Plaintiff was deprived of his relationship with his children and suffered great mental and emotional anguish and other grievous and continuing injuries and damages.

135.    WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of jurisdictional limits, along with punitive damages and any other relief this Court deems just and appropriate.

**COUNT X**
**Harassment – All Defendants**

136.    Plaintiff repeats and realleges paragraphs 1 through 135 as set forth above.

137.    At all times relevant to the events described, Plaintiff had a right to be free from intentional and repeated conduct by others that was intended to harass, intimidate, or cause emotional distress.

138.    The Defendants, and each of them, engaged in a continuous pattern of harassment against Plaintiff, including but not limited to:

- Repeated instances of physical aggression, including unwanted physical contact by Defendant Daniel Puls in November 2019 and again on April 17, 2021.

- Verbal threats and intimidation, such as Defendant Daniel Puls's statement in January 2023 at the public library, where he threatened Plaintiff by insinuating that Plaintiff was "a problem" that he would "get rid of."

- Attempts to provoke physical confrontations, as seen when Defendant Cheryl Puls intentionally blocked Plaintiff's path on April 17, 2021, escalating the situation and leading to physical aggression by Defendant Daniel Puls.

- Multiple acts by Defendant Alissa Puls, including physical assaults on October 4, 2018, and December 19, 2019, designed to provoke Plaintiff into retaliating and subjecting him to potential false accusations of domestic violence.

139.    The conduct of all Defendants was intentional, without legitimate purpose, and undertaken with the goal of causing Plaintiff emotional distress, fear, and intimidation.

140.    Defendants' repeated and continuous harassment of Plaintiff caused him significant emotional distress, anxiety, and fear for his personal safety. The actions of Defendants disrupted Plaintiff's life and interfered with his ability to exercise his rights as a parent.

141.    The pattern of harassment exhibited by Defendants was severe, pervasive, and outrageous, exceeding the bounds of decency tolerated by society.

142.    WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of jurisdictional limits, along with punitive damages and any other relief this Court deems just and appropriate.

## COUNT XI
### Tortious Interference – Cheryl and Daniel Puls

143.    Plaintiff repeats and realleges paragraphs 1 through 142 as set forth above.

144.    At all relevant times during the marriage of Mr. Quinlan and Ms. Puls, Plaintiff had a reasonable expectation of entering into a marital contract with Ms. Puls and enjoying marital life without interference, manipulation, and undermining by third parties.

145.    At all relevant times during their marriage, Defendants Cheryl Puls and Daniel Puls knew of Plaintiff entering into marriage with Ms. Puls and the expectation that Plaintiff would be free to enjoy married life without interference, manipulation, and undermining.

146.    Defendants Cheryl Puls and Daniel Puls willfully and intentionally interfered with Plaintiff's marital relationship with Ms. Puls by continuously involving themselves in private marital matters, encouraging Ms. Puls to act against Plaintiff's interests, and undermining the stability of the marriage.

147.    Defendants Cheryl Puls and Daniel Puls' interference included encouraging Ms. Puls to escalate minor disagreements into serious conflicts, making false allegations against Plaintiff, and providing false information to law enforcement and other authorities to harm Plaintiff.

148.    As a direct and proximate result of Defendant Cheryl Puls and Daniel Puls' interference, Plaintiff's marital relationship was severely harmed, contributing toward divorce, emotional distress, and great financial losses.

149.    Defendants' interfering acts were done willfully, or with a wanton disregard for the rights of Plaintiff, especially his parental rights.

150.    Plaintiff suffered personal and pecuniary damages, and harm to his reputation, as a result of Defendants' tortious interference.

151.    WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of jurisdictional limits, along with punitive damages and any other relief this Court deems just and appropriate.

## COUNT XII
### Assault and Battery – Cheryl and Daniel Puls

152.    Plaintiff repeats and realleges paragraphs 1 through 151 as set forth above.

153.    At all times relevant to the events described above, Plaintiff had a right to be free from unwanted, offensive, and harmful physical contact, as well as a right to be free from acts causing reasonable apprehension of imminent harm.

154.    On multiple occasions, Defendant Daniel Puls intentionally engaged in conduct that resulted in harmful and offensive physical contact with Plaintiff. For example, in November 2019 Daniel Puls forced his way into Plaintiff's home by pushing Plaintiff aside after being denied entry, thereby committing battery. Further, on April 17, 2021, Daniel Puls attacked Plaintiff from behind, putting Plaintiff in a headlock while shouting and shoving. This conduct was unprovoked and constituted both battery and assault, as it involved unwanted physical contact and caused Plaintiff to fear imminent harm.

155.    Defendant Cheryl Puls also committed acts of assault and battery on April 17, 2021, by intentionally blocking Plaintiff's path as he attempted to leave his residence. Her exaggerated reaction, coupled with her refusal to allow Plaintiff to pass, was intended to provoke a confrontation, leading directly to the physical aggression by Defendant Daniel Puls.

156.    As a result of Defendants' intentional and unlawful actions, Plaintiff experienced unwanted physical contact, fear for his safety, and emotional distress.

157.    The conduct of Defendants was undertaken without Plaintiff's consent and with disregard for Plaintiff's right to be free from harmful or offensive contact and the fear of such contact.

158.    The acts of battery and assault committed by Defendants Cheryl Puls and Daniel Puls caused Plaintiff to suffer emotional distress, fear for his safety, and fear that Defendants would conspire to cause greater harm to Plaintiff in the future.

159.    WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of jurisdictional limits, along with punitive damages and any other relief this Court deems just and appropriate.

### COUNT XIII
### Intentional Infliction of Emotional Distress – Alissa Puls

160.    Plaintiff repeats and realleges paragraphs 1 through 159 as set forth above.

161.    Throughout the marriage, Defendant Alissa Puls made several hundred vile and insidious threats to terrorize, manipulate, and control Plaintiff, Mr. Quinlan.

162.    These threats frequently included threats to instigate malicious prosecution, threats to slander Plaintiff through false allegations of abuse, and threats to destroy his career and reputation.

163.    Ms. Puls made these threats both verbally and through text messages, often several times per week and, on some occasions, multiple times per day. These threats were never reasonably justifiable.

164.    Several threats were aimed at coercing Mr. Quinlan into doing a variety of acts against his will. On multiple occasions, Plaintiff felt compelled to comply with these threats to avoid the severe consequences Ms. Puls had promised.

165.    Ms. Puls regularly threatened to cause severe harm to Plaintiff, warning that if Plaintiff chose to divorce her, she would instigate malicious prosecution, tarnish his reputation through false allegations of abuse, ruin his career and job prospects, and sever his relationship with his children.

166.    After the divorce was finalized, Ms. Puls demonstrated that these extreme threats were not idle but were part of a deliberate and malicious plan. She acted on these threats as vindictive punishment

for the divorce, initiating a series of harmful actions, including false allegations, malicious prosecution, and interference with Plaintiff's parental rights.

167.   Ms. Puls's actions in actualizing these malicious threats constitute outrageous, extreme, and shocking conduct that amounts to intentional infliction of emotional distress upon Plaintiff. Her actions were calculated and carried out with the intent to cause Plaintiff severe emotional pain and suffering.

168.   As a direct result of Ms. Puls's intentional and outrageous conduct, Plaintiff has suffered severe emotional distress that has affected every aspect of his life, including his family relationships, personal relationships, ability to work, mental and physical health, reputation, and financial stability.

169.   The tortious actions of Ms. Puls against Plaintiff were so severe, ruthless, extreme, and malicious that they would shock the conscience of any reasonable person.

170.   As a direct and proximate result of Ms. Puls's intentional infliction of emotional distress, Plaintiff was deprived of his relationship with his children and suffered severe mental and emotional anguish, as well as other grievous and continuing injuries and damages.

171.   WHEREFORE, Plaintiff demands judgment against Defendant Alissa Puls in an amount in excess of jurisdictional limits, along with punitive damages and any other relief this Court deems just and appropriate.

## COUNT XIV
### Breach of Contract – Alissa Puls

172.   Plaintiff repeats and realleges paragraphs 1 through 171 as set forth above.

173.   Ms. Puls and Mr. Quinlan settled their divorce through mediation, agreeing to a contract that established joint custody of the children and parenting time for both Ms. Puls and Mr. Quinlan.

174.   The divorce settlement was established on December 8, 2022.

175.    Ms. Puls entered into the divorce settlement in bad faith, without any intentions of abiding by the agreement. Primarily, Ms. Puls wanted full custody of the children and did not want Mr. Quinlan to be able to participate in their medical care.

176.    After entering into this contract, Ms. Puls immediately resumed her strategy of making false allegations of sexual abuse of the children against Mr. Quinlan.

177.    Just seven (7) weeks after the divorce settlement agreement was made, Ms. Puls succeeded in getting Mr. Quinlan arrested, prosecuted, and cut off from access to the children.

178.    In so doing, Ms. Puls breached all the contract terms regarding the custody part of the divorce settlement agreement.

179.    Further, in addition to breaking the custody agreement, Ms. Puls also broke the financial agreement by refusing to remove Mr. Quinlan from the auto loan agreement for their 2018 Honda Odyssey.

180.    Ms. Puls then missed loan payments on this auto loan, which caused great harm to Mr. Quinlan's credit score even though Mr. Quinlan was no longer responsible for the auto loan payment.

181.    Further, the malicious prosecution of Mr. Quinlan has also made it impossible for Mr. Quinlan to hold a job. The legal fees and the inability to work have caused Mr. Quinlan to go deep into debt.

182.    In so doing, Ms. Puls also breached the terms of the financial portion of the divorce settlement agreement.

183.    As a direct and proximate result of Ms. Puls's breach of contract, Plaintiff suffered substantial harm, including legal fees, loss of access to his children, emotional distress, financial damage, and reputational damage.

184.    WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of jurisdictional limits, along with punitive damages and any other relief this Court deems just and appropriate.

## PRECLUSION OF COUNTERCLAIMS

185.    As part of the divorce settlement agreement, both parties had the opportunity to resolve and address any and all claims, disputes, or grievances arising from the marital relationship, including any alleged conduct or incidents occurring between March 16, 2016, and December 8, 2022.

186.    The divorce settlement agreement constitutes a full and final resolution of any claims or potential claims between Plaintiff and Ms. Puls arising out of events during the marriage. The agreement expressly or impliedly precludes any party from bringing future claims related to the period of the marriage.

187.    As a result, any counterclaims, defenses, or allegations by Defendant Ms. Puls against Plaintiff that originate from conduct occurring during the marriage (March 16, 2016, to December 8, 2022) are precluded by the terms of the divorce settlement agreement and are therefore barred in this proceeding.

188.    Defendant Ms. Puls is being sued only for tortious actions carried out after the couple were divorced. There is no similar agreement between the Plaintiff and Defendants Cheryl Puls or Daniel Puls.

## REQUESTED RELIEF

WHEREFORE, Plaintiff Carsten J. Quinlan, respectfully requests that this Court enters judgment in his favor and against Defendants, awarding compensatory damages, punitive damages, attorney's fees and costs to the sum of $2,500,000 along with any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff Carsten J. Quinlan hereby demands a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all issues so triable.

## SIGNATURE

Plaintiff, Carsten J. Quinlan, hereby declares under penalty of perjury that the foregoing is true and correct to the best of his understanding and belief.


_____

**Carsten J. Quinlan**
Plaintiff, Pro Se

Date:      October 22, 2024
Address:  8643 Hudson Bay
           Woodbury, MN 55125
Phone:   (925) 980 7210
Email:    cjquin8@gmail.com